## Illinois Central Railroad Company v. Finch's Administrator.

(Decided December 4, 1917.)

(Two Cases.)

### Appeal from Fulton Circuit Court.

1. Trial—Peremptory Instruction—Improbability of Facts.—In an action for damages for fatal injuries to a flagman, sustained by falling from a car while making a "flying switch," where the only evidence of negligence was that the cut of cars the flagman was riding hit "some other cars" where it was inherently impossible and at variance with all physical laws for any other cars to have been, held error for the court to refuse to direct a verdict for the defendant.

2. New Trial—Newly Discovered Evidence—Cumulative and Impeaching Evidence.—Newly discovered evidence that is merely cumulative and impeaching will not authorize a new trial, unless it is of such decisive character as to render a different result reasonably certain and most probably would have affected the verdict, and due diligence in its discovery is shown.

ROBBINS & ROBBINS, CARR & CARR, TRABUE, DOOLAN & COX and R. N. FLETCHER for appellant.

FLATT & MOORE and EDWARD THOMAS for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

W. R. Finch, twenty-one years of age and unmarried, was killed at Covington, Tennessee, early in the after-

noon of January 20, 1915, by one of appellant's freight trains, upon which he was employed as flagman, while seven cars were being moved from a side track on the main track to be placed in the freight train, by a process called a "flying switch" or "kick-back." Alleging that his death was caused by the negligence of defendant's agents in the careless and violent manner in which these cars were backed and bumped against other parts of the train, his administrator instituted this action against the railroad company and recovered a verdict and judgment for $2,500.00, from which the company appeals.

After the rendition of this judgment, the railroad company filed an action against the administrator seeking a new trial, upon the ground of newly discovered evidence, in which the new trail was refused and the petition dismissed; and, from that judgment, the company has also appealed; and the two cases are, by order of this court upon motion of appellant, heard together. Although heard together, the questions involved are not the same, and a separate consideration will be necessary.

In the original suit, the plaintiff introduced but four witnesses upon the question of how the accident occurred. Mr. J. D. Clark, the fireman on the train, testified that the train was stopped some distance north of the switch leading from the main track to the side track; that the engine, with five empty freight cars that were to be left on the side track, was uncoupled from the main train and proceeded to the water tank south of the switch; that, after taking water, the engine and five cars were backed on to the side track and coupled to seven cars that were to be placed in the train; that, with the twelve cars attached, the engine pulled out on to the main track, so that all of the cars cleared the switch, when the seven cars were again uncoupled and the train backed up north on the main track, until near the switch, when a speed of from three to six miles an hour had been attained, the engine, with the five cars still attached to it, was stopped for the purpose of letting the detached seven cars proceed north on the main track past the switch, and intending to then put the five cars in on the side track to be left there, but that just after the engine was stopped, the engineer said: "Lord have mercy, we have killed the flagman;" that they left the engine and five cars standing on the main track just south of the switch and went to the flagman, whom they found uncon-

scious, lying on the ground between the main track and the side track, with both legs run over; that the witness did not see the accident or know the deceased was on the moving cars; that there was no knocking, jarring or, jerking, or anything in the way the engine was handled, to account for the accident; and that he did not know how far back towards the main train the seven cars were kicked.

This version of the movement of the cars, at the time of and just previous to the accident, is corroborated by every witness who testified for either side, except that some of the witnesses placed the speed of the train, at the time of the accident, as high as ten miles an hour; and every witness, who professed to know, stated that the seven cars did not go back north on the main track to, or any ways near, the main train, stationed some twenty-five to forty car lengths north of the switch; and that the decedent fell from the seven cars some four or five car lengths north of the switch and near a cotton compress shed just west of the tracks.

The only testimony of negligence in this operation is furnished by Lee Kent and Stacker Hall, two negroes, introduced by plaintiff; and, although both of these witnesses testified that the seven cars did not strike the main train, which, they said, was some distance north on the main track, they do say that this cut of cars, while rolling north on the main track, hit some ''other car or cars'' with such force as to move these ''other cars'' about the length of a rail, as stated by Kent, and some four or five feet, as stated by Hall. Both Kent and Hall testified that they were standing near the cotton compress shed west of the track and heard a loud noise about the time the cars came together. Unless this evidence ''be something of relevant consequence, possessed of the quality of proof and having fitness to induce conviction,'' plaintiff did not make out his case, and the peremptory instruction asked for by defendant should have been given.

It is thoroughly established by the evidence of plaintiff's witnesses, including Kent and Hall, as well as that of defendant's witnesses, and not contradicted by any one, that the seven cars, from one of which decedent fell, were the only cars on the main track between the main train, left standing some distance north, and the five cars attached to the engine, which, at the time of

the accident, were south of the place of the accident near the switch; and the testimony of Kent and Hall that these cars, moving north on the main track, hit "some other cars" where none were or could have been, and whose mysterious appearance they do not even attempt to explain, is utterly at variance with all physical laws and inherently impossible.

As this was the only evidence of negligence, or from which it could be inferred, the court erred in refusing to direct the verdict for defendant. L. & N. R. Co. v. Chambers, 165 Ky. 703; Wasioto & B. M. R. Co. v. Hall, 167 Ky. 819; Louisville Water Co. v. Lally, 168 Ky. 348.

2. The action for a new trial was tried upon the affidavits of Lee Kent, James Gaynes, Limas Peete, Louis Yarbro, and Billie Wynn, filed with the petition, and the affidavit of Frank Moore, filed with the defendant's answer, which were, by agreement, read as the depositions of the affiants. As we have above set out, the original suit for damages went to the jury on the question of negligence upon the evidence of Lee Kent and Stacker Hall. In his affidavit, filed with the petition for a new trial, Lee Kent stated that his evidence upon the trial of the damage suit was untrue; that he did not hear any loud noise, or see, or know, anything about the accident, except what he was told shortly after it occurred.

The affiants, Gaynes, Peete, and Yarbro, state in their affidavits that they were standing on the platform north of the compress shed, at the time of the accident; and that Stacker Hall was not there, as he had testified he was when he claimed to have witnessed the accident. Billie Wynn, in his affidavit, stated that he witnessed the accident; that decedent, in attempting to jump off the moving car, slipped and fell under the train; that there was no collision or loud noise; and that Stacker Hall was not where he testified he witnessed the accident. The retraction of Lee Kent was not sufficient to warrant a new trial. Wallace v. Commonwealth, 167 Ky. 277. The evidence of the other affiants was merely cumulative, insofar as it contradicted the testimony of Kent and Hall of a collision and loud noise, since defendant's witnesses testified that neither occurred; and their evidence, tending to impeach the witness, Stacker Hall, in addition to being cumulative, is not such newly discovered evidence as will authorize a new trial. So, the only

newly discovered evidence presented, which, considered by itself, would be competent ordinarily in an action for a new trial, is the statement of Billie Wynn that decedent, in attempting to jump off, slipped and fell from the cars and under the train, which alone, did not, in our judgment, authorize the granting of a new trial. So, considered alone, neither the retraction of Kent nor the cumulative and impeaching evidence of the other affiants, no more than the evidence of Wynn as to how the accident happened, warranted a new trial; and we need not decide whether or not, when all of this evidence is considered, it is, as contended for defendant, of such a decisive character as to render a different result reasonably certain, and authorize a new trial under the rule announced in L. & N. R. Co. v. Hulette, 171 Ky. 500, since in our judgment due diligence was not shown in discovering the evidence; as no effort was made to interview any of these witnesses until after the trial, although all of them lived in the immediate vicinity of the accident and were at the time employed at the compress shed, and defendant ought to have realized the advisability of interviewing them before, as well as after, the trial.

Wherefore, the judgment in the first case is reversed and the original cause is remanded for a new trial consistent herewith; and the judgment in the action for a new trial is affirmed.