## Consolidation Coal Company v. Potter and Wife.

(Decided December 17, 1918.)

### Appeal from Letcher Circuit Court.

Deeds—Ambiguous Description—Evidence.—Appellee in convey-ing to another a tract of land employed the same ambiguous de-scriptive terms of a line in dispute and adjacent lines as were used in the deed by which he acquired the land, and the verdict of the jury sustaining his claim that the description in the deed to him included more land than he reconveyed by the same de-scription, is held to be flagrantly against the extraneous evidence introduced to explain the ambiguous terms in the deed by which he sold the land.

S. R. BAKER, A. W. YOUNG, E. C. O'REAR, J. C. JONES and MAY & MAY for appellant.

FELIX G. FIELDS and R. MONROE FIELDS for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

The Lexington & Eastern Railway Company filed condemnation proceedings in the Letcher county court for a right of way over a small triangular piece of land which it alleged to be the property of appellee, Reuben Potter. The appellant, Consolidation Coal Co., filed an intervening petition denying Potter's ownership and alleged it owned the land, and issue was joined between Potter and the coal company as to which owned the land. The question as to the damages to the land was tried in the county court and from the judgment of that court an appeal was taken by the railroad company to the circuit court, to which court the issue as to the ownership of the land was also transferred. A trial of both issues in the circuit court resulted in a verdict and judgment fixing the damages at $500.00 and upholding Potter's claim of title to the land. The coal company alone has appealed, and only on the question of title.

It is agreed that Isaac Potter owned the land in controversy when on November 23, 1892, he conveyed to his son, Reuben, a tract of about eighty (80) acres which the latter claims included the land in controversy, only about an acre and a half, and upon which claim his title depends. Appellant claims (1) that the land in controversy is not included in Isaac Potter's deed to appellee and was conveyed to it from Isaac Potter through others; and (2) that if included in appellee's deed from Isaac Potter it was, on January 23, 1910, conveyed by appellee to W. K. Collier and later by him through others to appellant.

It also is conceded by appellee that appellant owns the minerals in the land in dispute, as well as adjacent lands, under conveyance from himself and his father, which would be unimportant upon this inquiry, which involves only the surface, were it not that the mineral deeds throw light upon the controversy about the surface, as will develop later.

Since, if appellee has conveyed to appellant's remote vendor the land in controversy, as claimed by appellant, the whole controversy is thereby foreclosed, we shall first consider the conveyance from appellee to W. K. Collier to see if it includes this land, assuming for the moment that it was included in appellee's deed from his father, a very troublesome question and determinable only upon extraneous evidence.

The Collier deed in describing the line, the proper location of which is the basis of the dispute, and the line next before and next after the disputed line is as follows: "thence down the spur with a line between Isaac Potter and Reuben Potter to a black oak; *thence a straight line to the aforesaid creek;* thence with the creek down to a black walnut," the disputed line being the one we have italicized.

These same lines are described in the deed from Isaac Potter to Reuben Potter thus: "thence down the spur with a line between Isaac Potter to a black oak; thence with a straight line to the creek to the beginning." The striking similarity of the two descriptions is emphasized by the undisputed fact that the only difference does not affect the dispute but was due alone to the fact that in the deed to Reuben Potter the line after reaching the creek proceeded down the creek to the beginning corner some distance further down the creek than the black walnut at which the line down the creek stopped in the conveyance to Collier, and, that this change was made so as to include some land acquired by appellee from Sam Hall by another deed; and, the fact that this change and only this change was made in the description of the lines adjacent to the land in controversy is almost conclusively persuasive that the two descriptions mean exactly the same locations on the land from the black oak on the spur to the black walnut on the creek. The same terms having been employed by appellee in describing a boundary line in the deed disposing of the land as were employed in the deed by which the land was acquired the description it would seem is hardly susceptible of meaning one line in the first deed but another line in the second deed, yet that is what appellee is claiming, and is the effect of the judgment appealed from. Not only are appellee's buying and selling descriptions of the controverted line identical, but after closing the particular description in his deed to Collier he added the following general description: "This being the same property conveyed to Reuben Potter by Samuel Hall and wife and Isaac Potter and wife 23rd day of November, 1892, deeds to same recorded in deed book No. 0, page 190, &c., Letcher county clerk's office."

It would therefore seem to be almost, if not absolutely, conclusive that the deed to Collier conveyed all

of appellee's interest in the two tracts conveyed to him by Sam Hall and Isaac Potter, from a construction of these deeds alone when considered together. In addition to this it is admitted that, in conveying the minerals, Isaac Potter conveyed down to the location of the disputed line claimed by appellant and that appellee conveyed only up to that line thus located. It is also conclusively shown that when in 1910 appellee sold the surface to Collier, having theretofore sold all of his mineral rights, he represented to Collier that he was selling out his every interest in the lands acquired by him from his father and Hall not theretofore disposed of for the purpose of moving away from that county and locating elsewhere and that he did move from Letcher county immediately thereafter to Greenup county, Ky., where he remained several years, during which time he did not assess or pay taxes upon the disputed land or do any act to suggest to any one that he had retained title to this little triangle of rough, untillable and then worthless land; and that he made no audible or visible claim to same until it became of value because of the known purpose of the railroad company to acquire a right of way across same. This belated claim involved such a repudiation of everything appellee had said or done in the meantime that the task would have been absolutely hopeless had it not been for the fact that this line, some ten or twelve years previously, had been in dispute between him and his father; and even the attempt to revive that dispute so long after an admitted agreement, so far as the minerals were concerned, upon the location of the line where now claimed by appellant required more than Spartan courage. The explanation now given by appellee and his father, the latter no longer interested in the dispute about the proper location of the line, is that while they agreed in settlement of their dispute to allow the father to convey as his property the minerals under the land in dispute, the basis of this agreement publicly made and carried into the public records by their deeds then made to the minerals on either side of the agreed line, was a secret arrangement between them that the father would pay appellee for the land; that he had never done this and therefore the surface still belonged to appellee. But, even if we assume that the description of the line in dispute in the deeds to and from appellee is so ambiguous that, though the same in both deeds, it

might mean different locations, a most peculiar ambiguity, and further that the explantion given by appellee and his father that their agreement about the location of the disputed line applied to the minerals alone, a very peculiar agreement, and that their parol evidence as to their secret agreement, has probative value to explain the same ambiguity in appellee's deed from his father and his deed to Collier so as to mean one thing in one deed and another thing in the other deed, this evidence was overwhelmed and completely destroyed not only by the evidence of others but by the record and parol evidence of their every act and conduct for a period of more than ten years, and our only doubt has been as to whether we should reverse the judgment because of the refusal of the trial court to direct the verdict in appellant's favor or because the verdict is flagrantly against the evidence. That we should do the latter we are sure; but we can not do the former because whenever there is any evidence, however improbable, to sustain a disputed claim of fact the question is for the jury unless indeed the evidence is of the character denounced in L. & N. R. R. Co. v. Chambers, 165 Ky. 703, "as inherently impossible and absolutely at variance with well established and universally recognized physical laws."

Since the evidence here in support of appellee's claim does not quite attain the quality of inherent impossibility or violate any physical law, we must content ourselves with a reversal because the verdict is flagrantly against the evidence.

Wherefore the judgment is reversed and the cause remanded for another trial.