## Hanger v. Louisville & Nashville Railroad Company.

(Decided January 17, 1922.)

### Appeal from Madison Circuit Court.

Railroads—Right of Way—Fences—Railroad Not Liable for Maintenance of Fence Where It Paid the Owner or His Vendor Dam-

ages, in the Estimation of Which the Cost of Fencing was Taken Into Consideration.—In view of sections 1792 and 1796, Kentucky Statutes, a railroad which has condemned its right of way, and paid the former owner of land damages, in the estimation of which the cost of fencing was taken into consideration, is under no obligation to contribute to the cost of maintaining such fences.

J. J. GREENLEAF for appellant.

BENJAMIN D. WARFIELD and A. R. BURNAM, JR., for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Mrs. Elizabeth A. Hanger now owns a large tract of land, just outside of the city of Richmond, which she inherited from her father, William Arnold, who died several years ago. While the land was owned by William Arnold, the R. N. I. & B. Railroad Company, now a part of the Louisville & Nashville railroad system, condemned a right of way through the land, which made it necessary to erect two new fences along the right of way. In the condemnation proceedings, the jury returned the following verdict:

"We of the jury find for the defendant the actual value of the land taken, $2,000.00; injuries to residue of land and incidentals, $16,000.00; necessary fences, $2,000.00."

The railroad paid the damages assessed and received a deed for the right of way.

Some time ago Mrs. Hanger notified the Louisville & Nashville Railroad Company to pay one-half the costs of maintaining the fences, and the company having declined to comply with the notice, this suit was brought to compel it to do so. A demurrer was sustained to the petition and the petition was dismissed. Mrs. Hanger appeals.

The act with reference to railroad fences embraces sections 1789 to 1799, inclusive, Kentucky Statutes. Section 1789 places a railroad company, owning its right of way, and which has been constructed and in operation for five years, upon the same terms and obligations with other landowners owning adjoining lands in the Commonwealth. Section 1790 makes it incumbent upon the railroad to construct and maintain a good lawful fence on one-half of the distance of the division line between such rights of way and the adjoining lands, except as thereinafter provided. Section 1791 provided that where

one party has built, the other may be required to build, and prescribes the necessary notices. Section 1792 is in part as follows:

"That the provisions of this act shall not apply in any case wherein any corporation or person owning or controlling and operating such railroad has furnished the material to construct a fence, or condemned its right of way, and paid the owner or his vendor damages, in the estimation of which the cost of fencing was taken into consideration, nor be so construed as to require such corporation or person as aforesaid to build any fence along the line through any town or city, or across any public or private passway."

Section 1793 deals with cattle guards. Section 1794 gives to the land owner, who has already built a lawful fence along the whole distance of the division line between his land and the right of way of any railroad, the right to remove one-half the fence. Section 1795 provides that all laws and parts of laws governing the construction of farm fences are held to apply to railroad fences in all cases where, by the provisions of this act, railroad corporations are required to fence their right of way. Section 1796 is as follows:

"That this act shall not apply to any land where the owner or his vendor has received compensation for fencing the same."

The remaining sections are not material.

It is suggested in argument that it is unfair and inequitable to place on the landowner the entire burden of maintaining a fence which he would not have had to construct or maintain had it not been for the action of the railroad in condemning a right of way through his land, and that the statute should be so construed as not to exempt the railroad from the liability of maintenance, but only from the liability which it had already discharged by the payment of damages. The fencing law is purely statutory, and were it not for the statute, there would be no liability whatever. That being true, we are not at liberty to ignore the plain terms of the statute for the purpose of giving effect to our own notions of what would be fair and equitable between the parties. The very statute, which imposes upon a railroad company certain obligations with respect to fences along its right of way, provides that the provisions of the act shall not apply to any railroad that has condemned its right of

way and paid the owner or his vendor damages, in the estimation of which the cost of fencing was taken into consideration. It further provides that the act shall not apply to any land where the owner or his vendor has received compensation for fencing same. It is clear from this language that the legislature intended that none of the provisions of the act should apply in the circumstances mentioned, and when those circumstances arise, we cannot override the legislative will by declaring that any particular provision is still in force.

There is no merit in the contention that sections 1792 and 1796 were repealed by section 1795, which was enacted in the year 1900 and provides that ''all laws and parts of laws governing the construction of farm fences are held hereby to apply to railroad fences in all cases where, by the provisions of this act, railroad corporations are required to fence their right of way.'' By its very terms, section 1795 is limited to cases where, by the provisions of the act, railroad corporations are required to fence their right of way. Here the railroad company was not required by the act to fence its right of way. On the contrary, it was required by an entirely different act merely to compensate the landowner in damages, and included in those damages was the necessary fencing.

As the railroad condemned a right of way through the land in question, and paid the former owner damages, in the estimation of which the cost of fencing was taken into consideration, it follows that the railroad company is under no obligation to contribute to the cost of maintaining the fences. That being true, the demurrer to the petition was properly sustained.

Judgment affirmed.

Whole court sitting, Judge Sampson dissenting.


DISSENTING OPINION BY JUDGE SAMPSON.

The great injustice to landowners caused by the construction put upon section 1789, to and including section 1799, Kentucky Statutes, by the majority opinion of this court, no less than the apparent unreasonableness thereof impels me to dissent from the holding, and to set out briefly my reasons for dissenting. The opinion holds the said sections of the statute to mean that where a railroad, by condemnation proceedings, forces its way through the farm of another and is assessed with the original cost

of the fencing of its proportional part of the right of way, necessary along the same, to protect the railroad's property as well as that of the landowner, the railroad shall not be liable at any future time for any part of the cost of rebuilding, maintaining or keeping in repair the said fence, but that this entire burden shall be borne by the landowner alone; that if the fence is destroyed by fire or storm, or when it decays, as it will through the lapse of time, the fence must be rebuilt by the farmer or landowner at his sole expense, although the fence is for the joint use and benefit alike of the railroad and the landowner, and this burden, heavy and unreasonable as it is, must be sustained by the landowner and his descendants through the ages. I think such a construction of the statute is wholly contrary to our public policy and unwarranted by the language employed in the statute. By section 1789 it is expressly provided that a railroad "is hereby put on equal terms and obligations with other landowners owning adjoining lands in this Commonwealth." This is the first section of the act relating to railroad fences, and is intended to declare the public policy of the state upon the subject. This provision is absolutely fair. The burden of building and maintaining fences along the right of way of a railroad is divided between joint landowners, the farmer and the railroad, for whose joint benefit the fence is constructed and maintained. The cost of the original construction of a fence is the smallest part thereof. The great expense comes in maintaining the fence through all the succeeding years. Such a fence is a partnership affair, just as between the lands of farmers, and the same rules should in equity be applied. The original act relating to railroad fences was passed in February, 1893, and no doubt was intended to have the construction for which I contend, but this act, being somewhat doubtful in its meaning, was amended March 17, 1900, for the purpose of removing all doubt and of making certain the liability of the railroad for its share of the cost of the maintenance of the fencing on the line between the right of way and the adjoining landowners, this amendment reading: "All laws and parts of laws governing the construction of farm fences are held hereby to apply to railroad fences in all cases where, by the provisions of this act, railroad corporations are required to fence their right of way." This amendment to the

original act relating to railroad fences was passed by the legislature seven years after the two sections, 1792 and 1796, on which the majority opinion is based, and therefore, supersedes those two sections, and makes the fence along the right of way of a railroad subject to all the laws governing the construction of farm fences, and this includes that part of the law which requires the joint owners of a fence to maintain it. The amendment above quoted was intended to prevent that construction of the statute which the majority opinion has placed upon it. What reason is there, or can there be, why a railroad company owning land which by law is required to be fenced, should be exempt from the cost of maintaining the fence which it built for its protection, and the entire burden placed upon the adjoining lands? In good conscience, is there anything fair or reasonable about this? Must a landowner whose farm has been laid open by the construction of a railroad against his will, be required to build and maintain a fence along the right of way of the railroad for the advantage of the corporation? The mere statement of the proposition offends the sense of justice, and demands that if this is the construction to be put upon the sections as now contained in the statute, the lawmaking body of the state should make another and more effectual attempt to make the statute clearly mean, what no doubt the original framers thereof intended it should mean, that railroads owning rights of way are "put on equal terms and obligations with other landowners owning adjoining lands in this Commonwealth," and that the sections of the statutes, relating to farm fences, be applied to railroad fences in all cases so far as it affects the maintenance thereof. Of course, where the railroad company is assessed in condemnation proceedings, not only with the cost of the original construction of the fence but for its maintenance also, this rule should not and would not apply, but where the railroad only contributes its pro rata part of the original cost of the construction of the fence, it should rightfully, as I believe under the statute as it now exists, be compelled to assist in maintaining the fence as do other joint owners of such improvements.

For these reasons I respectfully dissent from the majority opinion of the court.