# Lousiville & Nashville Railroad Company v. Burnam, Trustee, et al.

## (Decided December 18, 1925.)

## Appeal From Madison Circuit Court.

1. Eminent Domain—Testimony that it was More Expensive to Maintain Fence Along Railroad than Between Farms and Along Curve than Along Straight Line Held Competent.—In proceedings by railroad company to condemn land, testimony that it was more difficult to maintain fence along right of way than ordinary fence between farms because trains often burn posts, and coal, ashes, and soot have bad effect on fence, and that it was more difficult to construct and more expensive to maintain fence along curve than along straight line, was competent to show cost of building and maintaining fences, if it was necessary for landowner to maintain fences.

2. Eminent Domain—Admission of Testimony that Strip of Land Cut Off by Railroad from Main Body of Farm Would Not be as Valuable for Grazing Purposes with Trains Passing Held Error.— In proceeings by railroad company to condemn land, admitting testimony that strip of land cut off by railroad from main body of farm would not be as valuable for grazing on account of animals being frightened by passing trains was error; such damages being too remote, imaginary, uncertain, and speculative.

3. Eminent Domain—All Injuries which May Result from Prudent Operation of Road Must be Included in Recovery for Condemnation of Land.—In proceedings by railroad company to condemn land for right of way, all injuries which may result from prudent operation of railroad must be included in recovery.

4. Eminent Domain—Scope of Evidence in Proceedings by Railroad to Condemn Land Stated.—In proceedings by railroad company to condemn land for right of way, evidence about market value of land injured, but not taken, includes every element arising from *construction* and *prudent operation* of road which in appreciable degree affects market value of property left, and is capable of ascertainment and estimation, but remote, imaginary, uncertain, and speculative damages should be disregarded.

5. Eminent Domain—Admission of Evidence as to Depth of Cuts and Height of Fills as Affecting Drainage of Land Not Condemned Held Proper.—In proceeding by railroad campany to condemn land for right of way, admitting evidence as to depth of cuts and height of fills which might affect drainage of remaining land and so change its market value was proper.

6. Eminent Domain—Everything that Affects Market Value of Land Left, Resulting from Taking of Right of Way and Construction of Railroad on it, Should be Considered by Jury.—In proceedings by railroad company to condemn land for right of way, everything that affects market value of land left, resulting from taking of

strip and construction of railroad upon it, should be considered by jury.

7.  Eminent Domain—Matters Affecting Value of Land Not Taken for Railroad Right of Way Proper to be Considered in Estimating Damages Stated.—In proceedings by railroad company to condémn right of way, manner in which remainder of land in question must be plowed, its drainage, accessibility of various pieces to roads and to each other, and construction and maintenance of any fences, bridges, or other improvements made reasonably necessary to enable owner to have thereafter as reasonable use and enjoyment of remainder as he had before taking, are proper elements to be considered by jury.

8.  Eminent Domain—Proper Instructions in Proceedings by Railroad Company to Condemn Land for Right of Way Stated.—Proper instructions as to measure of damages in proceedings by railroad company to condemn right of way stated.

9.  Eminent Domain—"Market Value" of Land Defined.—In proceedings by railroad to condemn land for right of way, "market value" of land is price it will bring if offered for sale by one who desires, but is not compelled, to sell, and bought by one who desires to purchase, but is not compelled to have it.

10. Eminent Domain—Jury in Proceedings to Condemn Right of Way Should State Separately in Verdict Amount Awarded for Land Taken and for Damage to Remainder of Tract, if Any, and for Cost of Fence, if Any.—In proceedings by railroad company to condemn right of way, jury should state separately in verdict amount awarded for land taken, for damage to remainder of tract, if any, and for cost of fencing, if any.

11. Eminent Domain—Owner of Land Taken for Right of Way Should be Compensated for Fencing Necessary to Afford him as Reasonable Use of Remainder of Land as he had Before Taking.—Under Constitution, owner of land condemned for railroad right of way should be compensated for fencing necessary to afford him as reasonable use and enjoyment of remainder of land as he had before taking.

12. Eminent Domain—If Verdict in Condemnation Case is Excessive, Motion for New Trial Should be Sustained.—In proceedings by railroad company to condemn land for right of way, if verdict is excessive, motion for new trial should be sustained.

13. Eminent Domain—Award for Taking Land for Right of Way Held Excessive.—In proceedings to condemn land for railroad right of way, where land was taken from farm of 193 acres; assessed for taxation at $19,200, award of $24,700 for condemning 13 acres thereof was excessive and will be set aside on appeal.

WOODWARD, WARFIELD & DAWSON and G. MURRAY SMITH for appellant.

BURNAM & GEENLEAF for appellees.

Opinion of the Court by Drury, Commissioner—
Reversing.

The appellant will be referred to as the plaintiff, and
has appealed from a judgment awarded against it in
favor of the appellees, who will be called the defendants,
for $24,700.00 for land taken in condemnation proceed-
ings. The plaintiff sought to relocate its railroad in order
to get better grades and easier curves. Unable to pur-
chase from the defendants, it instituted condemnation
proceedings to obtain the land desired. Commissioners
were appointed, and assessed the damages thus:

Value of land taken ........................................... $5,300.00
Cost of fencing ................................................... 1,175.00
Resulting damages ........................................... 20,700.00
                                                                            —————
Total ...................................................................$27,175.00

Exceptions were filed to the commissioners' report and
in the county court the following was assessed against
plaintiff for the taking:

Value of land taken ........................................... $3,162.50
Cost of fencing ................................................... 1,700.00
Resulting damages ........................................... 20,700.00
                                                                            —————
Total ...................................................................$25,562.50

Plaintiff paid that sum into the county court and took
possession of the land. It then appealed to the circuit
court, where there was assessed against it for this tak-
ing:

Value of land taken ........................................... $2,980.00
Cost of fencing ................................................... 2,500.00
Resulting Damages ........................................... 19,220.00
                                                                            —————
Total ...................................................................$24,700.00

From the judgment entered upon this verdict of the jury,
it has appealed to this court.

This case was practiced well, and is remarkably free
from errors. The plaintiff complains of the evidence:
First, because the defendant Burnam was permitted to
testify that it was more difficult to maintain a fence along
a railroad right of way than an ordinary fence between
farms, because the trains often burn the posts and the
coal, ashes and soot have a very deteriorating effect on

fencing, and that it is more difficult to construct and more expensive to maintain a fence along a curve than it is a straight fence. There is no contradiction that these things were true with the most prudent operation of the railroad, and if it is necessary for the defendant to build and maintain fences, this testimony was clearly competent to show the cost of building and maintaining these fences. The other testimony of which plaintiff is complaining is that defendant Burnam was permitted to testify that a strip of land cut off by a railroad from the main body of the farm would not be as valuable for grazing purposes with trains going back and forth beside it. This strip of ground is of varying widths. It is about 400 feet wide at the widest part, and perhaps 150 feet at the narrowest. Its average width will not exceed 275 feet. The defendant shows that probably 40 trains a day will pass this place, and that cattle do not graze well near a railroad track on account of passing trains. Since there can be but one assessment of damages, all injuries that may result from the prudent operation of this road must be included in this recovery. L. & N. R. R. Co. v. Scomp, 124 Ky. 330, 98 S. W. 1024, 30 R. 487; Hanger v. L. & N. R. R. Co., 193 Ky. 419, 236 S. W. 568; Cin. N. O. & T. P. R. Co. v. Sadieville Milling Co., 137 Ky. 568, 126 S. W. 118.

In view of this, the evidence in condemnation cases about matters affecting the market value of land injured, but not taken, takes a very wide range, and generally speaking, every element arising from the construction and prudent operation of the road, which in an appreciable degree affects the market value of the property left, and is capable of ascertainment and estimation in dollars and cents, is properly to be taken into consideration, but remote, imaginary, uncertain and speculative damages should be disregarded. The evidence about cattle not grazing well on this strip falls within this exception and should not have been admitted. L. & N. R. R. Co. v. Hall, 143 Ky. 497, 136 S. W. 905.

Witnesses were asked about the height of the fills proposed and depth of cuts that would be made. It was proper to admit this evidence as the changes made in the surface of the strip taken may affect the drainage of the remaining land, and if it does, it will change the market value of it. Everything that affects the market value of the land left that results from the taking of this strip, and the construction of the railroad upon it, should be

considered by the jury. The manner in which the remainder of the land must be plowed, its drainage, the accessibility of the various pieces to roads and to each other, and the construction and maintenance of any fences, bridges or other improvements made reasonably necessary in order to enable the landowner to have thereafter as reasonable use and enjoyment of the remainder as he had before the taking, are all proper elements for the consideration of the jury. Other witnesses gave like testimony, which was properly admitted for the same reason.

Plaintiff complains of the instructions given. We have carefully examined them, and find very little merit in plaintiff's objection; but upon the retrial of this case, the court will give the following instructions, number three being given before because the plaintiff asked it, and the defendant did not object, and if such an instruction is asked again, it should be given, though we see no particular necessity for it:

1. You are instructed that the plaintiff had under the law, a right to take and has taken from the defendants, the two strips of land aggregating 13.21 acres, described in the evidence, one being taken for a passway for the benefit of this and the Ramsey land, and the other for a right of way on which plaintiff proposes to construct and operate a double tracked steam railroad. You are to consider the value of the land taken in relation to the entire 193.47 acres of which it was a part, and as it was before the taking, considering all the purposes for which you may believe from the evidence this 193.47 acres was adapted. You are to consider the damage, if any, to the 180.26 acres remaining after this 13.21 acres is taken and prudently used for the purposes taken, the shape of the pieces left, their condition, connection with and relation to each other, and to the highway, and the added burden, if any, of erecting and thereafter maintaining any additional fencing or other improvements that you may find from the evidence, will, after and because of the taking, be reasonably necessary to afford defendants such reasonable use and enjoyment thereof as was had before the taking, and considering these things, you will award the defendants such a sum as you may believe from the evidence is the fair and reasonable value of the 13.21 acres of land taken, and in addition, such sum as will reasonably compensate defendants for

the damages, if any, done to the 180.26 acres of land remaining. The entire amount of your finding should not exceed the difference between the actual market value of the entire tract immediately before, and the market value of what is left immediately after the taking, excluding from both these estimates any enhancement, if any, in the value of the remainder by reason of the construction and prudent operation of the road.

2. The market value of property is the price which it will bring when it is offered for sale by one who desires to sell, but is not compelled to do so, and is bought by one who desires to purchase, but is not compelled to have it.

3. You will find and state separately in your verdict the amount awarded for the land taken, for the damage to the remainder of the tract, if any, and for the cost of fencing, if any.

On the trial, the plaintiff asked the court to instruct the jury not to consider as an element of damage the cost of maintaining fencing, but only the cost of the original construction of additional fencing when made necessary by the taking, but this court has said in the case of Louisville, St. Louis & Texas R. Co. v. Barrett, 91 Ky. 487, 16 S. W. 278, 13 R. 57:

"If, in view of the probable future use of the land, additional fencing will be necessary of which the jury or commissioners are to judge, and the owner must construct the fence if he has it, then the land is depreciated in proportion to the expense of constructing and maintaining such fencing. Nothing can be allowed for fence as fence. The allowance should be for the depreciation of the land in consequence of the burden thus cast upon it."

This court said, again, in the case of Hanger v. L. & N. R. Co., 193 Ky. 419, 236 S. W. 568:

"As the railroad condemned a right of way through the land in question, and paid the former owner damages, in the estimation of which the cost of fencing was taken into consideration, it follows that the railroad company is under no obligation to contribute to the cost of maintaining the fences. That being true, the demurrer to the petition was properly sustained."

With these two expressions of this court before it, the trial court properly overruled the instruction as to maintaining fence, offered by the plaintiff, for when the strip of land is taken, it may be necessary that fencing be done in order to afford the owner as reasonable use and enjoyment of the remainder of the farm as he had before the taking. All of this burden is cast upon the landowner. It is a burden that was not upon him before, and that was put upon him by this taking, and unless this cost is allowed him in the verdict, he does not get that full compensation contemplated by section 242 of our Constitution.

We have disposed of all the alleged errors set out by plaintiff in its grounds for a new trial, except the one wherein it alleged that the verdict is so grossly excessive as to appear at first blush to have been given under the influence of passion and prejudice, and that the verdict is not sustained by the law and the evidence. The verdict of a jury in a condemnation case may be excessive, just as in any other case, and when it is so, the motion for a new trial should be sustained. Elizabethtown & Paducah R. Co. v. Stickler, 4 Ky. Opin 446; Elizabethtown & Paducah R. Co. v. Kurtz, et al., 4 Ky. Opin. 71; Calor Oil & Gas Co. v. Franzell, et al., 128 Ky. 715, 33 R. 98, 109 S. W. 328 and 122 S. W. 188; Calor Oil & Gas Co. v. Withers' Admr., et al., 141 Ky. 489, 133 S. W. 210; L. & N. R. R. Co. v. Asher, 15 S. W. 517, 12 R. 815.

We have here a farm of 193.47 acres, assessed for taxation at $19,200.00 and an award of $24,700.00 for the taking of only 13.21 acres of it. This is $5,500.00 more than the assessed value of the entire farm. This award, if loaned at 6% interest would produce an annual income of $1,462.00, which is over $7.60 per acre income on every acre of the entire 193.47 acres. This is unreasonable. It almost amounts to a judicial determination that the whole farm is less valuable than one of its parts, and that part we see from actual surveys, is less than 7% of the farm. We have concluded, therefore, that this finding is excessive. In saying this, we are fully aware that in the case of Sandy Valley & E. Ry. Co. v. Bentley, 161 Ky. 555, 171 S. W. 178, we said:

"While it may be true that the value of the property as fixed by the jury is unusually high, and much more than we would have fixed it, if the question were not for the jury, but one for our determination,

yet where six witnesses fix the value at from $2,500.00 to $5,000.00, and nine witnesses fix the value at from $40,000.00 to $65,000.00, we know of no rule of law that will permit us absolutely to ignore the testimony of the nine witnesses, and conclude that the six witnesses are correct in their opinion. Indeed, the only way by which we could reverse this case would be to disregard the evidence entirely, and also the finding of the jury, and fix the market value of the lot in controversy at what we think would be fair and right under the circumstances. This we have no right to do.''

There is this difference between that case and this. In that case the jury was fixing the value of a lot, all of which was taken. In this case the jury fixed the value of the land taken at $2,980.00, or $225.00 per acre. This was a definite, certain and reasonable finding. Twenty-five hundred dollars was allowed for fencing, which was perhaps a trifle low; but that was a definite thing upon which the jury could figure and make estimates. When it came to the question of damage to the remainder of the land the jury was met with difficulties, and the finding that the 180.26 acres of land remaining will be damaged, and its market value depreciated $19,220.00 is unreasonable. That is an allowance of $100.00 per acre on the entire 192.2 acres which the jury believed the farm contained. This finding for damages exceeds the assessed value of the farm. There is opinion evidence in the record, which if unqualifiedly accepted, would support the verdict, but the figures submittted by these witnesses are so extravagant that the probability of their correctness is very remote. Doubtlessly, these witnesses honestly think that these fabulous figures correctly represent the injury done to this land by the taking, but the stubborn fact remains that the 180.26 acres are there, with their fertility and productiveness unimpaired. Grass and grain will grow there as abundantly as before, and these crops will be as succulent and nutritious as any grown before the taking. The physical facts are such as to demonstrate that this evidence is not correct, and the verdict unjust and unsupported in law and in fact. It should not be allowed to stand. This court has reversed judgments for these same reasons in other cases. See L. & N. R. R. Co. v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B 471; Consolidation Coal Co. v. Potter, 182 Ky. 562, 206 S. W. 776;

Louisville Water Co. v. Lally, 168 Ky. 348, 182 S. W. 186, L. R. A. 1916B 300; I. C. R. R. Co. v. Finch's Admr., 178 Ky. 229, 198 S. W. 734.

The judgment is reversed and the cause remanded with directions to award plaintiff a new trial to be had in conformity herewith.

RESPONSE TO APPELLEES' PETITION FOR REHEARING.

PER CURIAM. In that petition of appellees' counsel for a rehearing of what they are pleased to term "Mr. Drury's opinion" the argument of counsel is directed principally to two points: One, that the opinion is based practically entirely on the assessed value of the farm for taxation at $19,200.00; and the other, that we, in reversing the judgment because it was excessive, violated the well established rule in this and other jurisdictions circumscribing the right of courts to ignore testimony and to set aside a verdict as being flagrantly against the evidence where it is conflicting and the court would have returned a different one thereon had it occupied the place of the jury, and which rule has many times been announced by this court, the more recent cases being: Sandy Valley & Elkhorn Railway Co. v. Bentley, 161 Ky. 555. 171 S. W. 178; L & N. R. R. Co. v. White Villa Club, 155 Ky. 452, 159 S. W. 983; Music v. Big Sandy Railway Company, 163 Ky. 628, 174 S. W. 44; and Long Fork Railway Co. v Sizemore, 184 Ky. 54, 211 S. W. 193. Before discussing either of those two points it might be well to call attention of counsel to the fact that no opinion prepared by any member of this court or by any of its commissioners is the opinion of its writer alone, but is the opinion of the court itself though prepared by the writer of it. See response in Gaffney v. Switow, 211 Ky. 232, 277 S. W. 453. Also it might be well to remember that while the members of the court and its commissioners in becoming such may still be referred to as "Mr." yet when speaking of them officially and in connection with their duties on the court, the more decorous designation would be to refer to them by the official title they hold.

The judgment was not reversed because of the disparity between the verdict and the *assessed* valuation of the farm for taxation, as will be seen from a casual reading of it. The assessed valuation is conceded to be competent evidence, and while it is by no means controlling,

it is a fact which the jury as well as the court may take into consideration, and that was all that was done in the opinion.

In considering the second point it must not be overlooked that a verdict may be set aside as being flagrantly against the evidence, and also for another and distinct ground, *i. e.,* that the amount of assessment is excessive and it was upon the latter ground that the opinion disagreed with the jury. The cases of L. & N. R. R. Co. v. Chambers, 165 Ky. 703, 178 S. W. 1041; Louisville Water Company v. Lally, 168 Ky. 348, 182 S. W. 186; I. C. R. R. Co. v. Finch, 178 Ky. 229, 198 S. W. 734, and Consolidation Coal Company v. Potter, 182 Ky. 562, 206 S. W. 776, dealt with testimony concerning physical facts and actual occurrences to which witnesses testified, and it was held in each of them that, notwithstanding the positive testimony directed toward the establishing of such facts, the court would disregard it as being inherently incredible and thereby followed an exception to the general rule, *supra,* as stated in the Bentley and other cases. The verdict in this case found the value of the 13 acres actually taken to be $2,980.00, with the *resulting* damages to the remainder of more than 180 acres of the farm at $19,200.00, and it with the other items allowed produces a sum which if loaned out at 6% interest would pay an annual rental on the entire farm including the land actually taken of $7.60 per acre for all time with the principal sum unabated and which was a resulting damage of $100.00 per acre, in round numbers, for the entire farm, including the land taken, or $106.75 per acre for the remaining 180 acres. The basis upon which that estimate was reached was necessarily upon the "opinions" of the witnesses and their opinions, in turn, were based upon evidence which courts admit in the trial of such cases, but which is recognized to be more or less speculative and remote as well as somewhat fanciful in some of its elements, dependent upon the conceptions of the particular witness testifying. As pointed out in the opinion, the 180 remaining acres was farm property and it is just as productive since the taking as it was before, regardless of its actual valuation as farm land. Some inconvenience will be experienced in crossing the railroad from one part of the remaining land to the other, but the evidence showed that proper and convenient crossings were provided for, and the cost of fencing was taken care of by the assessment in the verdict of $2,500.00 over and

above and independent of the resulting damages of $19,200.00 to the remaining portion of the tract. What then enters into the latter item except the inconvenience of crossing the track and the other admissible facts of the nature we have described above?

If it can be said, as was done in the Chambers case and other like ones *supra,* where the testimony related to physical facts or actual occurrences, that the court would be authorized in its endeavor to administer justice to decline to accept that testimony at its full face value, then it would seem to follow that the same authoriy would exist to likewise question the more or less fanciful figures which have for their foundation only the *opinions* of the witnesses founded as above stated, and this and other courts have not hesitated to do so in a proper case; as will be seen from the cases of Calor Oil and Gas Co. v. Franzell, 128 Ky. 715, 109 S. W. 328; Same v. Withers, 141 Ky. 489, 133 S W. 210; L & N. R. R. Co. v. Asher, 12 K. L. R. 815, and Same v. Hall, 143 Ky. 497, 136 S. W. 905. While this court may not take judicial notice of the value of land as it is located, and must and will accept the opinions of witnesses showing themselves to be qualified to testify as to such value, still it may not shut its eyes to the *resulting* damage to land not appropriated, in the light of the facts bearing upon such diminution  In such case it is placed in the same position as the witnesses who based their opinions upon the same facts, and it is that difference which distinguishes this case from the Bentley case, *supra.* In that case the entire parcel of land was sought to be taken by the condemnation proceeding. It was located in the town of Jenkins in Letcher county. The available area for the construction of business houses, especially such as were contemplated by the condemnor therein, was limited by the mountains surrounding the town, and necessarily it commanded an exorbitant price over and above the same quantity of land not so situated. Its value, therefore, was essentially a question to be determined by the opinions of witnesses who were acquainted with the local situation and qualified to testify thereon.

In the case of Elkhorn & Beaver Valley Railway Co. v. Martin, 195 Ky. 20, 241 S. W. 344, the recovery of damage flowing from the alleged wrongful construction of a railroad bed was sought, and also for some wrongful appropriation of a small parcel of plaintiff's land. The

*opinion* testimony of witnesses in that case supported the verdict, but it was so exorbitant in the light of the developed facts that we held it to be excessive, and for that reason principally we reversed the judgment, although the assessed damages included the valuation of two small pieces of land wrongfully appropriated by the railroad company, and which were capable of being conclusively valued by the opinions of witnesses, as we have hereinbefore indicated. In so holding the opinion said: "Courts are established for the administration of justice, and should not permit, under any circumstnces, an absurd and patently unjust result to be reached through the forms of law. The two little pieces of land did not exceed in the aggregate one-half acre, and even if they each represented the most valuable part of the cultivating land on the place, the amount of the verdict is so absurdly excessive as to be revolting to even the commonest sense of justice." But it is said that a different rule should apply in condemnation proceedings, since, as contended, section 242 of our Constitution has the effect to make the verdict of the jury conclusive on the courts so as to deprive the latter of interfering with or disturbing them on account of their being either flagrantly against the evidence or excessive in amount. But we cannot agree with that contention, since all of our opinions cited, *supra,* wherein verdicts in condemnation proceedings were set aside for the reasons stated were written since the adoption of our Constitution. Moreover, text writers do not endorse the contention as a correct principle of law. See 20 C. J. 1116, Lewis on Eminent Domain, volume 2, sections 776 and 805, and 10 R. C. L., 222, para. 189. Paragraph 187 in the same volume sustains the observations as to the opinions of the witnesses upon the resultant damages to the remainder of the tract. The text in the latter section says, *inter alia*:

"The opinions of experts as to value, however, are not to be passively received and blindly followed, but are to be weighed by the jury and judged of in view of all the testimony in the case and the jury's own general knowledge of affairs, and have only such consideration given them as the jury may believe them entitled to receive. . . . In determining the damage to land not taken, a witness must be familiar with the market value before the injury was inflicted and the market value afterward, and esti-

mates of percentage of value lost, not based upon some substantial ground, should be excluded.''

Our, conclusion, therefore, is that the assessment in this case of $19,200.00 as resulting damages to the land not taken and which did not include the cost of constructing and maintaining extra fences was excessive, notwithstanding it had opinion evidence to support it. It is our further conclusion that such opinions to the extent of the damages given by the witnesses were not altogether based upon substantial grounds; and further, that it is the duty of courts to ''not permit, under any circumstances, an absurd and patently unjust result to be reached through the forms of law.''

We, therefore, conclude that the opinion did not depart from the rules of appellate practice, and the petition for rehearing is overruled.