## Commonwealth, by State Highway Commission v. Combs et al.

(Decided May 24, 1929.)

628

JOHN E. CAMPBELL for appellant.

F. J. EVERSOLE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This condemnation action was filed in the county court of Perry county on April 26, 1928, by appellant and plaintiff below, state highway commission, in the name of the commonwealth, against appellees and defendants below, A. B. Combs et al., to condemn a right of way for state highway purposes across a tract of land owned by defendants in Perry county bordering on Kentucky river, and containing 200 acres. The strip sought to be condemned was 60 feet wide and 910 feet long (slightly more than one-sixth of a mile) and contained by actual estimate 1.394 acres. The commissioners appointed by the county court to assess the legal damages to which the landowner is entitled in such cases allowed and reported the total sum of $1,000, divided as the law requires; but, upon exceptions filed by defendants, and a trial of them before a jury, it returned a verdict in favor of defendants for $2,633, from which plaintiff appealed to the Perry circuit court, and upon trial therein the jury returned in favor of defendants a verdict for $7,500, which the court declined to set aside on plaintiff's motion for a new trial, and, to reverse the judgment rendered thereon it prosecutes this appeal.

The grounds urged by plaintiff's counsel for reversal of the judgment are: (1) Error of the court in the admission of evidence offered by defendants; (2) error in the rejection of testimony offered by plaintiff; and (3) that the verdict is flagrantly excessive—all three of which we have concluded are meritorious and should be and are sustained. We will dispose of each of them in the order named.

The incompetent testimony objected to under this ground consisted chiefly in (a) that given by defendant relating to the amount he realized from the sale of town lots from a portion of the farm some eight or more years prior to the trial, when the mining town or village of Dolan was laid out, or shortly thereafter, and the prices he had been *offered* some years prior to the trial for other parcels of land within the village; and (b), testimony as to the amount paid to neighboring landowners for the right of way for the same road over their land. Under subdivision (a), defendant A. B. Combs testified, over the objections and exceptions of plaintiff, that between 1920 and 1922 he divided a strip of his land lying within the limits of the mining town referred to, and near to its business center, into lots 25 by 75 feet, and that he sold them for an aggregate sum of more than $19,000. If it should be conceded that testimony of that character might, under certain conditions, be competent for what it was worth, we are clearly convinced that it was not so under the facts of this case. The sale of the lots was made under conditions entirely different from those existing at the time of this trial in the circuit court or at the time of the filing of this action in the county court. The strip of land sought to be condemned herein was much more removed from the valuable territory of the village than were the lots involved in the complained of testimony, and the conditions affecting their value were much more favorable to its enhancement than obtained at the time of the filing of this action with reference to the involved strip and consequential damages for its taking. Doubtless the pioneers, including defendants, in the launching of the village and giving it a place in Kentucky's geography, possessed exaggerated dreams of its future outcome, and because thereof defendants were the recipients of the evident boom prices that prevailed for supposed eligible and desirable lots. There was no proof of a convincing nature that the village had grown in recent years, or that the conditions were such that it was reasonably probable that it would ever do so, and it is obviously certain that such testimony had a prejudicial effect on the minds of the jurors. It is a well-known fact of such universal prevalence as to entitle us to take judicial notice of it that under the circumstances and conditions prevailing at the time of the sale of the lots by defendants their price is generally

doubled, trebled, and sometimes quadrupled because of their supposed advantageous location, and that the same character of property and not exceeding a block distant would command a much less price.

The prices that defendants had been offered for eligible town sites either for residences or business locations possessed the same demerits and the additional one that its probative value is so remote as to render it incompetent. The offer may not have been genuine, or may have been made by one who was financially unable to perform the terms of his offer if accepted, and other similar contingencies, equally potent, might exist establishing the irrelevancy of such testimony. Moreover, the offeree might be induced to reject the offer, not because of inadequacy of the submitted prices, but for other reasons, sentimental or otherwise, and which furnishes additional grounds for the rejection of that character of testimony, and clearly so in the absence of other proof in the case eliminating the objections pointed out. Indeed in this case defendant A. B. Combs gave a sentimental reason as to why he did not accept the offered price for some lots, the amount of which he was permitted to state to the jury over plaintiff's objections and exceptions. In discussing the same character of testimony, the text in Jones on Evidence, vol. 1, sec. 168, p. 858, says: "Clearly, evidence should not be received to prove what offers have been made to sell or what prices have been asked or refused." In note 28 to that text cases supporting it from many courts of the country, both state and federal, are cited, with none to the contrary. We therefore conclude, that, under the condition of this record, as presented to us, all the testimony complained of under subdivision (a) of this ground was improperly admitted, and plaintiff's objections thereto should have been sustained.

The testimony complained of under subdivision (b) consisted in proof of the prices that were paid to others in the neighborhood in obtaining the right of way across their land for the construction of the same highway. That question was recently before this court in the case of Chicago, St. Louis & New Orleans Ry. Co. v. Ware, 220 Ky. 778, 295 S. W. 1000, and we therein held that it was incompetent and should have been rejected by the trial court. Other recent cases from this court are referred to therein, among which is that of Kentucky

Hydro-Electric Co. v. Woodard, 216 Ky. 618, 287 S. W. 985, in which the same question was involved, but as to whether the testimony would be admissible if similar conditions were shown to exist was expressly left open in that opinion; but in the Ware opinion we held that the evidence was incompetent, notwithstanding similar conditions are shown to exist. Therefore the court erred in this case in admitting the testimony of John M. Ellington as to what he had been paid for an acre or less of ground for the right of way of the same highway, and in admitting any other testimony of the same nature.

■ Plaintiff, upon the trial in the circuit court, offered to prove the amount of the assessed value of defendants' entire farm of 200 acres made by them, or one of them for all the others, for ad valorem taxation for the fiscal year within which the action was filed, and the amount of which was $5,000. The court sustained defendants' objection to that testimony, and which was contrary to the uniformly declared rule within this and other jurisdictions. The prevailing rule declaring such testimony competent for what it is worth is thus stated in 22 C. J. 305, sec. 343: "Returns for taxation being statements of the party to be affected under circumstances in which it is incumbent upon him to disclose the truth, are ordinarily regarded as admissions which may be received in evidence, even on the question of value." To the same effect is Jones on Evidence, vol 1, sec. 168, and Nichols on Eminent Domain, vol. 2, sec. 458, the latter of which relates exclusively to the competency of the testimony in condemnation proceedings.

In that section it is pointed out that, if the valuation is the one fixed by the assessing officer alone, it is not admissible as against the owner, but further along in the same section, and on page 1209, it is said, with reference to an assessment made by the owner, that: "In a few of such states (where the owner is required to fix the assessment value himself), it is held that such return cannot be treated as an admission against interest and used against the owner as independent evidence of value, but the weight of authority is otherwise, and even in states which reject the return as independent evidence of value, if the owner testifies at the trial that his land was of a greater value than his return indicated, the return can be used to contradict his testimony." A domestic case holding that the testimony now under considera-

tion is competent is Louisville & Nashville Railway Co. v. White Villa Club, 155 Ky. 452, 159 S. W. 983.

But, independently of the foregoing authorities, and viewing the question as one of first impression in this jurisdiction, we would feel compelled to hold that an assessment made by the owner, as is required by our assessment statutes, would be competent in a case like this, and under its circumstances and conditions. It will be observed that, when defendants listed their entire farm and fixed a value thereon, it was done solely for the purpose of measuring the amount of their contribution to be paid by them to the general fund of the county and state for public purposes. One of the public purposes to which the county fund so contributed by defendants must be applied under the provisions of section 4356t7 of our Statutes was and is the cost of acquiring rights of way for the construction of state highways through the several counties. It would be extremely unfair to say that defendants, after fixing themselves the value of their farm so as to reduce their taxes (being their contribution to the public treasury) should not be confronted therewith when they seek to take from that fund the damages to the same property resulting from appropriating a small fractional part thereof for the public purpose of constructing a highway. At first blush it would appear to be unfair and inequitable to allow them, under such circumstances, to take such diametrically opposed position affecting the public treasury. But, be that as it may, it is sufficient for the purposes of this case to say that the testimony was competent and that the court erred in rejecting it.

■ That ground 3 should be sustained is clearly manifest from what we have thus far stated. In the case of Louisville & Nashville Railroad v. Burnam, 214 Ky. 736, 284 S. W. 391, including the response to the petition for rehearing, and others therein referred to, we had occasion to deal with facts somewhat analogous to those appearing in this case, and we held the verdict therein was excessive, although the testimony heard on that trial contained greater supporting facts and circumstances than any appearing in this case. We likewise expressed our views upon such extravagant and grossly exaggerated verdicts in such cases in our pinion prepared in the recent case of Terhune v. Gorham & Co., 16 S. W. (2d) 1060, decided May 3, 1929, and not

yet (officially) published. In this case the surface exposure of the strip taken contains only .871 of an acre; the remaining portion being covered by the waters of the Kentucky river out to the boundary line of defendants' tract. Considering the portion covered by water as of equal value to that which is not so, and eliminating all questions of the proper consequential damage, defendants realized by the verdict at the rate of $5,313 and some cents per acre (or a total valuation of $1,063,000 for defendants' whole farm, which, as we have seen, they assessed for taxation at only $5,000) or 212.63 times the value fixed by defendants for assessment purposes. The mere statements of those facts is sufficient in and of themselves to authorize any court to conclude that the verdict is grossly excessive, in the absence of credible and convincing proof of additional facts of extraordinarily consequential damages, but which are absent in this case. We held in the cases of L. & N. R. R. Co. v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B, 471, Louisville Water Co. v. Lally, 168 Ky. 348, 182 S. W. 186, L. R. A. 1916D, 300, I. C. R. Co. v. Finch, 178 Ky. 229, 198 S. W. 734, and Consolidation Coal Co. v. Potter, 182 Ky. 562, 206 S. W. 776, that certain positive testimony concerning physical facts would not be credited because of its inherent incredibility and as being opposed to universally known scientific facts.

In the response to the petition for rehearing in the Burnam case, supra, the doctrine of those cases, as it relates to physical facts, was referred to, and its relevancy to fanciful figures embodied in purely opinion evidence as to valuation was recognized and applied. In other words, it was therein held in effect that neither courts nor juries, being agencies for the administration of justice, should blindly accept such manifestly reckless and extravagant opinion estimates in the face of what every one knowns to be the actual facts. Under the section of the statute supra, it is made the bounden duty of each county to furnish the rights of way as well as those constructed solely by the county, and which requires of them the payment of judgments in condemnation suits for the acquisition of the rights of way. The same section also requires that such expenditures by the county shall be made from its general fund, and, if verdicts like the one here involved should be upheld and approved, one of two consequences would inevitably happen; i. e.,

the various counties of the state would become bankrupt or the construction of highways would have to be abandoned, and a clear and necessary public purpose would not only be obstructed and hindered, but to a great extent prevented, because, forsooth, juries and courts gave unquestioned credence to the opinions of actually interested witnesses, and others though not parties to the immediate litigation have pending similar actions in furtherance of the same public purpose and whose mutual fellow feeling makes friendly witnesses of them all in the trial of all their cases. Disinterested witnesses in this case, including the appointed commissioners by the county court, fixed defendant's damages at a reasonable sum, and they were influenced to do so, as far as this record shows, without bias or prejudice for or against either side of the controversy.

As an illustration of the exaggerated character of the testimony in thise case, defendant A. B. Combs testified that according to his opinion the 200-acre tract of land would be damaged by the construction of the highway between $8,000 and $10,000, but which as we are convinced neither a jury nor a court would be justified in accepting in the light of human observation and experience.

We therefore conclude that the verdict is greatly excessive, and, because thereof, and for the other reasons stated herein, the judgment is reversed, with directions to grant the new trial and for proceedings consistent with this opinion.