## Louisville & Nashville Railroad Company v. Chambers.

(Decided September 23, 1915.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, No. 4).

Trial—Taking Case or Question from Jury—Credibility of Witnesses.—Where the only evidence upon which a plaintiff rests his right to recover consists of a statement of alleged facts inherently impossible and absolutely at variance with well established and universally recognized physical laws, such evidence will not constitute a compliance with the scintilla rule so as to entitle the plaintiff to have his case submitted to the jury.

HELM & HELM and BENJAMIN D. WARFIELD for appellant.

S. L. TRUSTY for appellee.

OPINION OF THE COURT BY JUDGE HANNAH.—Reversing.

Davies Street in Louisville extends east and west. It terminates at its eastern end in a "commons" adjoining the lumber yards of the C. C. Mengel Bros. Company. On the south side of this street and at the corner where the street ends there is a six-room double frame dwelling with brick foundation and cellars under it.

The eastern half of this double dwelling (the half nearer the commons) consisting of three rooms was on November 5th, 1912, occupied by W. E. Chambers and his wife, Mahala, and their son and daughter-in-law, Mr. and Mrs. R. C. Chambers.

From the Louisville & Nashville Railroad Company's tracks on Seventh Street there extends westward an industrial switch into the Mengel lumber yard, which switch terminates at a point in the commons about twenty feet east of the Chambers residence, and which runs approximately on a line with the southern line of Davies Street. The dwelling stands back nineteen feet from the fence on the southern line of the street, and four and a half feet from a fence on the east side of the property.

On the night of November 4th, 1912, Mr. and Mrs. R. C. Chambers slept in the front room of the eastern half of this double dwelling, and appellee and her husband occupied the adjoining or "middle" room. The bed occupied by the latter couple stood in the southwest corner of the room.

About 4 o'clock on the morning of the 5th a train of cars was backed on to the Mengel switch, and owing to a misunderstanding of signals among the train crew, one car and the trucks of another rolled off of the end of the switch, crashed into the fence in front of the Chambers residence, and stopped with the front trucks in a cistern located on the front fence line and at a point just in front of the middle of the house.

Alleging that "said train and cars were caused to crash into and through the front fence and yard of said premises, violently plowing through the ground and crashing and demolishing things in its path and thereby jarring, shaking and moving said house, and causing plaintiff to come in contact with hard substances, permanently injuring her," Mrs. Mahala Chambers instituted this action against the railroad company to recover damages for her injuries. From a verdict and judgment in her favor in the sum of two thousand dollars the defendant appeals.

The bed upon which the plaintiff and her husband were sleeping was an iron one, the foot of which was two feet higher than the mattress. She testified upon the trial that she was thrown over the foot of the bed on to a rocking chair and thereby injured.

The car itself did not touch the house. It struck the corner of the fence, nineteen feet in front of the house,

although about six feet of the width of the car was inside the line of the front fence. It tore down the front fence, which was built of pickets, and also demolished the first three panels of the side fence, and twisted some boards off of the fourth panel, the rear post of which was thirty-two feet from the front corner.

This side fence was constructed of posts placed eight feet apart, upon which were nailed horizontally pine boards sixteen feet long and one foot wide, the boards being arranged with "broken joints;" that is, the first and the third, and the second and fourth boards were so spaced as to end alternately on the posts to which they were attached. The fence was four boards (or four feet) high.

Aside from the breaking of a pane of glass in the front door (evidently caused by a flying picket from the front fence) nothing inside the house was disturbed except that the strings suspending a couple of pictures broke and a stovepipe became disconnected. Nor were there any marks of contact on the exterior of the dwelling.

Mr. and Mrs. R. C. Chambers, who were sleeping on a bed in the front room, were not thrown therefrom. A Mrs. Leonard, with her twenty-year old son and eighteen-year old daughter, occupied the western half of this double dwelling, and none of them were thrown from their beds or seriously disturbed. In fact the son testified that he was not awakened. And we are firmly convinced that Mrs. Mahala Chambers could not have been, as she testified, thrown from her position on the bed, over the foot thereof, two feet higher than the mattress, and on to a rocking chair near the foot thereof. Such an occurrence is inherently impossible; there was no force there present and operating upon her which could have produced such a result; and her testimony in that respect is impeached by all the physical facts, concerning which there is and can be no dispute.

Counsel for appellee undertake to explain this testimony by suggesting that it is quite possible that the noise made by the car in tearing down the fence and the noise of the breaking of the pane of glass in the front door, roused her from her sleep, and that while in a semi-conscious condition she jumped over the foot of the bed. This explanation is quite plausible, but we are not at liberty to accept the statements of counsel as to how she was injured. Appellee herself has undertaken to state how she

was injured, and some half dozen times declared in the course of her examination upon the trial that she was knocked over the foot of the bed—which is absolutely inconceivable and cannot be accepted as true.

1.   It is undoubtedly well settled in this jurisdiction that the credibility of witnesses is for the jury; that upon a motion for a directed verdict, the evidence for the adverse party must be taken as true and every reasonable inference fairly deducible therefrom must be indulged; and that as to the quantity of evidence necessary to convey a case to the jury, the "scintilla rule" prevails. But these rules, in sound judicial administration, do not become applicable unless the evidence of such adverse party be something of relevant consequence, possessed of the quality of proof, and having fitness to induce conviction. Clark v. Young's Ex'x, 146 Ky., 377, 142 S. W., 1032. Of necessity, these rules cannot apply where the only evidence upon which such adverse party rests his right to succeed, consists of a statement of alleged facts, inherently impossible and absolutely at variance with well established and universally recognized physical laws. In such case, that which purports to be evidence is insufficient to constitute a compliance with the requirements of the scintilla rule, for it is the essence of that rule that there must be some evidence (however slight) upon which the jury might rationally find a verdict for the party producing it.

In Blumenthal v. Boston & Maine R. R. Co., 97 Me., 255, 54 Atl., 474, the plaintiff had testified to alleged facts which were manifestly untrue; and the court said:

"It is undoubtedly true that where the determination of an issue of fact depends upon the credibility of witnesses, or where the jury would be justified in coming to a conclusion either way, as credence be given to the witnesses on the one side or the other, it is the duty of the court to submit such issue to the jury, however firmly convinced the presiding justice may be that there is no doubt as to where the truth lies; and, even where the surrounding circumstances merely make the story of the witness improbable, it is still the right of the litigant to have the issue thereby raised submitted to the tribunal created by the Constitution and laws for the determination of such questions. But, this cannot be so where the undisputed circumstances show that the story told by the witness upon a material issue cannot by any possibility be true,

or when the testimony of the witness is inherently impossible."

So, in McKinney v. Metropolitan Street Ry. Co., 86 N. Y. S., 461, 91 App. Div., 153, the court said: "This is not a case where the credibility of the witness is involved, which takes the case to the jury. His testimony is impeached by physical facts about which there is and can be no controversy." And, upon this ground, the court held the plaintiff not entitled to have his case submitted to the jury.

To the same effect, see also Waters-Pierce Oil Company v. Van Elederen, 137 Fed., 557, 70 C. C. A., 255 (evidence for plaintiff contrary to the established laws of hydrostatics); and Willis v. Browning, 179 Mo. App., 233, 166 S. W., 1070.

In Elliott on Railroads, Section 1703 (Second Edition), it is said that "Well established laws of nature and similar well known scientific and physical facts of which the courts will take judicial knowledge, may not only justify a trial court in directing a verdict or in setting aside a verdict and granting a new trial, but may also be sufficient to cause the appellate court to reverse the action of the trial court where it fails to give effect to such facts by directing a verdict or granting a new trial. Notwithstanding the general rule, which prevails in most jurisdictions, that the court on appeal will not weigh the evidence, neither the appellate court nor the trial court should stultify itself by allowing a verdict to stand although there may be evidence tending to support it, where the physical facts are such as to demonstrate that such evidence is untrue and the verdict unjust and unsupported in law and in fact." See also in re Harriott's Estate, 145 N. Y., 540, 40 N. E., 246; Johns v. N. W. Mutual Relief Ass'n, 90 Wis., 332, 63 N. W., 276; Hudson v. Rome R. Co., 145 N. Y., 408, 40 N. E., 8; Hunter v. N. Y. etc. R. Co., 116 N. Y., 615, 23 N. E., 9; Marshall v. Green Bay & W. R. Co. (Wis.), 103 N. W., 249; Baumann v. Hamburg-American Packet Co., 67 N. J. L., 250, 51 Atl., 461.

We are therefore of the opinion that the trial court should have sustained the motion of defendant for a directed verdict, a thorough and careful consideration of the question having convinced the court that the rule

herein announced is not only sound in principle but incontestably desirable and proper in the administration of procedural law, and one the discriminating application of which will more than justify its enunciation.

The judgment is reversed.