## Chickasaw Wood Products Co. v. Bridwell et al.

March 19, 1940.

Eugene Hubbard, Judge.

W. W. Downing and Louis Seelbach for appellant.

William Heidenberg, Roscoe Searcy and Davis, Boehl, Viser & Marcus for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The appellee, William Bridwell, was injured severely in a boiler explosion at the plant of the Anderson Manufacturing Company in Louisville, in September, 1937. Bridwell had been fireman for the Company for a number of years. In 1936 the Company leased a part of its woodworking plant to the appellant, Chickasaw Wood Pruducts Company. The Chickasaw Company furnished the Anderson Company with the shavings and sawdust from its business to be used for fuel. These materials were blown from the part of the plant occupied by the appellant to a cyclone on top of the part of the plant where the boiler room was located. They were stored there. By means of a chain which was under the control of Bridwell, these materials could be run into the furnace from the cyclone or could be run into a storage bin. The use of shavings and sawdust as fuel seems to require careful attention in order to avoid an explosion. The lathes and saws in the woodworking plant are connected with the cyclone by pipes. When a part of the plant is out of operation for a time dust sifts back from the cyclone into the pipes, and it is necessary to blow it out before operations are resumed. When, under such circumstances, dust is being blown out of the pipes, it is necessary for the fireman to regulate the flow of the materials coming from the cyclone so that they will go into the storage bin rather than into the furnace. If the dust is permitted to go into the boiler, an explosion will occur.

Shortly after the Chickasaw Company began its operations in 1936, there was such an explosion. Prior to that time the foreman in charge of the appellant's operations had been in the habit of notifying Bridwell that he was going to start up his fans to blow out his pipes after his plant had been shut down. After that explosion the appellant was instructed to notify, or at

least requested to notify, Albert Mudd, engineer of the Anderson plant, when it planned to start up operations after a shut down period. Mudd testified that after the explosion in 1936 Orien Blackard, who seems to have gone by the name of "Red," had notified him on a number of occasions before the Chickasaw Company started up its operations, and that he in turn had notified Bridwell, so that he could keep the dust from being blown into the boiler. Blackard testified, however, that he continued to notify Bridwell before beginning operations.

On September 27th, the Chickasaw Company started up its operations after having been shut down for approximately two weeks. Dust was blown into the boiler and an explosion followed. Bridwell suffered his injuries in that explosion. The Anderson Company was operating under the Workmen's Compensation Act, Kentucky Statutes, Section 4880 et seq., and Bridwell was compensated for his injuries by the Company's insurer, the Hartford Accident & Indemnity Company. Bridwell brought this action against the Chickasaw Company, alleging that his injuries resulted because of the failure of that Company to give notice before resuming its operations after a shut down period. The Insurance Company filed an intervening petition, with the view of recovering the amount which had been paid to Bridwell as compensation. The trial resulted in a verdict in favor of Bridwell in the amount of $6,000, and from a judgment on that verdict the Chickasaw Company is appealing.

The sole question presented upon the appeal is, was Bridwell notified that the Chickasaw Company was about to resume operations? While there is some question, as has been noted heretofore, that the Chickasaw Company should have notified Mudd before resuming operations, we think the trial court correctly instructed the jury to find for the appellant if they thought notice was given to Bridwell, and to find for Bridwell if they thought such notice was not given.

Blackard testified he went to the boiler room and told Bridwell he was ready to start up; that Bridwell said, "All right;" that he went back to his part of the plant and started up the fans; and that he did this

within about two minutes after he talked with Bridwell. Mudd's testimony on this point is as follows:

"27. When was the first information that you received to the effect that the Chickasaw Wood Products Company was going to start up that morning? A. When Bridwell came in and told me.

"28. What did Bridwell say to you? A. He said that Red passed the door and said something about ten or fifteen minutes. He came in and told me—he said, 'I guess he is going to start his fan.' Do you want me to finish?

"29. Just go ahead and tell the jury. A. I told him 'That is poor business in Red.' I was working—

"30. (Interrupting) What do you mean 'It was poor business in Red?' A. In saying ten or fifteen minutes, because it only takes five or ten seconds for this to happen.

"31. What did you immediately do, if anything, after he had come and told you? A. I was working on a pump at the time and I had a bar in my hand and I went to lay it over in my toolbox and I turned to go back to hunt Red up, to see what he wanted and no more than I got—I would say in a minute and a half after Bridwell told me—I hadn't more than got turned around and started in the direction to find Red when the explosion occurred."

Bridwell's testimony as to his conversation with Mudd is as follows:

"74. Shortly before the explosion did anybody pass on the outside of that door? A. Yes, sir.

"75. Do you know who it was? A. I don't know. I thought it was Mr. Blackard's voice.

"76. Could you tell what was said by whoever happened to pass there? Did you understand it at all? A. No, sir; I didn't. The only thing I understood, they said something about a fan in ten or fifteen minutes—

"Mr. Downing: I object to that statement, be-

cause he said he didn't know the voice and I think it is too speculative for him to testify.

"The Court: Let the objection be sustained. The jury will not consider that statement.

"Mr. Heidenberg: I am perfectly willing for that to go out.

"The Court: The jury will not consider that statement.

"77. Following the hearing of some voice on the outside did you go to the Chief Engineer, Mr. Mudd? A. I immediately went to Mr. Mudd.

"78. Where was Mr. Mudd located? A. In the engine room.

"79. Where is the engine room with reference to the boiler? A. Adjoining the boiler room on the east side.

"80. How far did you have to walk? A. About—not over five or ten feet.

"81. Did you inform Mr. Mudd of the fact that you had heard somebody holler something to the effect that the fan would be going in ten or fifteen minutes? A. Yes, sir; I did; and I asked him to find out what was said.

"82. You requested him to inquire what was said? A. Yes, sir.

"83. When you did that what did you then do? A. I immediately went back to my work. I was satisfied I would be notified if the fan was going to start.

"84. How much time elapsed between the time that you heard some voice out here in the open— A. (Interrupting) Two—between two and three minutes.

"85. How much time elapsed between that time and the time the explosion occurred? A. Two or three minutes.

"86. After you had gone to Mr. Mudd and asked him to ascertain what was said with reference to starting the fan what did you then do? A. I immediately went back to my work."

It is the Chickasaw Company's contention that Bridwell's action in going to Mudd showed that he had some notice that the Company's operations were going to be resumed, and that since he knew of the danger involved he should have taken the necessary steps to see that the dust was not blown into the boiler. It is pointed out that this would merely have required the shifting of the chain. In this connection it is insisted that a jury's verdict must be based upon rational evidence and not upon evidence at variance with physical laws and inherently impossible. The Company insists also that physical facts overcome all verbal testimony and that evidence can not be accepted where it is opposed to common sense. In support of these views the case of Louisville & N. R. Company v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B, 471, and other cases in support of those views, are cited. We can not agree, however, that these cases are applicable to the case at bar. Unquestionably, Bridwell knew the dangers involved under the circumstances presented in this case. He had narrowly escaped injury in a former explosion. It hardly stands to reason that he would have stood by and taken a chance of being injured, as well as seeing damage done to his employer's plant, if he had known that the fans were going to be turned on immediately. It is insisted that he shifted the chain many times during the day and that he should have shifted the chain if he had any notice that the Chickasaw Company was about to resume operations, but if, as he testified, he heard something about a fan in 10 or 15 minutes, it hardly stands to reason that he, in order to avoid negligence on his own part, would have been required to shift the chain, thereby cutting off the wood fuel from the furnace for 10 or 15 minutes and until after the time the pipes were blown out.

As indicated, we are of the opinion that the question of notice to Bridwell was properly submitted to the jury. They found that he was not notified that the Chickasaw Company was about to resume operations. While it is insisted by the appellant that Bridwell's action in going to Mudd indicated that he had some notice that operations might be resumed, we are not of the opinion that the notice was such as would bar him from recovering in this action. It follows from what has been said,

therefore, that we are not disposed to disturb the verdict of the jury.

Judgment affirmed.