# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: MARCH 23, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0537-MR

JERMAINE BEAMON          APPELLANT

V.        ON APPEAL FROM KENTON CIRCUIT COURT
HONORABLE PATRICIA M. SUMME, JUDGE
NO. 19-CR-01659

COMMONWEALTH OF KENTUCKY          APPELLEE

### MEMORANDUM OPINION OF THE COURT

### <u>AFFIRMING</u>

On July 29, 2017 Appellant Jermaine Beamon shot and killed Lazuri Collins while she was sitting in a car on 13th Street in Covington, Kentucky. Shots fired by Beamon also struck Lazuri's father Antonio, who was seated behind Lazuri in the rear passenger seat.

A jury in Kenton Circuit Court convicted Beamon of murder and first-degree assault. The trial court sentenced him to fifty years on the murder conviction and to twenty years on the conviction for first-degree assault, running consecutively for a total sentence of seventy years. Beamon now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). Following a careful review, we find no error and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Lazuri Collins drove down 13th Street in Covington in the early morning hours of July 29, 2017. Her friend Marcus Smith rode in the front passenger seat and her father Antonio Collins sat behind her in the rear passenger seat next to his girlfriend Brandy Thompson.

At the time a number of people were gathered outside near the intersection of 13th Street and Wheeler Street, some participating in or standing near a dice game in front of a home. Lazuri stopped in the middle of the street briefly and then began to pull forward in the direction of the dice game to park the car. As she pulled forward Beamon opened fire on the vehicle, striking it multiple times. Several shots passed through the vehicle's doors. At least one went through a window and the driver's seat headrest. Lazuri was shot in the head and died from her injuries several days later. Antonio was shot in the leg. Though Antonio ultimately survived, he suffered a broken leg, had to undergo physical therapy, and was unable to walk without assistance for a year.

On the day before the shooting Beamon had an altercation with Lazuri's on-again, off-again boyfriend Chris Goode in which Goode knocked Beamon unconscious and stole his money and cell phones. Greg Pritchett, a close friend of Beamon who considered him family, testified that shortly after this altercation Beamon told him he wanted to get revenge by killing Goode. Pritchett testified that he tried to persuade Beamon to retaliate against Goode

in a non-lethal manner but that Beamon was adamant about his desire to kill Goode.

Pritchett further testified that Beamon met him shortly before the shooting approximately two blocks from the eventual murder scene. Beamon showed Pritchett a gun he had obtained and told him he was going to 13th Street to "post up." Pritchett testified that Beamon was wearing a dark hoodie at the time.

Another witness, Simeon Jones, testified that twenty minutes before the shooting he saw Beamon hanging out near the dice game and wearing a dark hoodie. Jones stated that he said "what up" to Beamon, who responded by raising his index finger to his lips to indicate for Jones to "be quiet." Jones testified he then saw Beamon firing shots and was 100% sure Beamon was the gunman.

Beamon met with Pritchett the day after the shooting. Pritchett testified that during this meeting Beamon admitted he shot at the car and that he had been told Goode was in it. Pritchett took Beamon's cell phone, attempted to destroy it in battery acid, and threatened potential witnesses in case they were considering speaking with police.

Beamon gave a voluntary statement to police after rumors of his involvement in the shooting began to spread. He denied involvement in the shooting, offering as an alibi that he had been in a bar in Cincinnati with his cousin Andre Sinclair that evening. Beamon told police that Sinclair lived on "Glenwood" and provided his age and a physical description. Police were

3

unable to locate an Andre Sinclair and ultimately concluded he was a fabrication based on Beamon's uncle Deandre Beamon who had once lived on Glenwood and whose mother's maiden name was Sinclair. Deandre also told police Beamon had no cousin named Andre.

Another witness, Antoinette Malik, told police that the shooter was wearing a black hoodie and ran past a house after the shooting. The day after the shooting police traced the path described by Malik and found a black hoodie next to a Ruger 9 mm firearm in a nearby backyard. Testing revealed the gun to be the murder weapon and the hoodie to have gunshot residue. A DNA test of the hoodie also found it to have a mixture of DNA from three individuals, with Beamon as a major contributor and two other individuals as minor contributors.

A jury found Beamon guilty of murdering Lazuri and of first-degree assault for the shooting of Antonio. The jury recommended a sentence of fifty years for the murder and twenty years for the first-degree assault to run consecutively for a total of seventy years. The trial court sentenced Beamon consistent with this recommendation.

**ANALYSIS**

Beamon raises two issues for our review: (1) whether the trial court erred in denying his request for an instruction on first-degree manslaughter as a lesser-included offense of murder; and (2) whether the trial court erred in denying his motions for directed verdict. We review each issue in turn.

4

## I.    The trial court properly denied Beamon's request for an instruction on first-degree manslaughter.

Beamon first argues the trial court erred in not providing an instruction allowing the jury to consider first-degree manslaughter as a lesser-included offense of murder. Beamon tendered an instruction for first-degree manslaughter and thereby preserved this issue for review. *Swan v. Commonwealth*, 384 S.W.3d 77, 98 (Ky. 2012).

When a defendant contends the trial court erred either in failing to provide a requested jury instruction or in providing an unwarranted jury instruction, we review the decision for abuse of discretion. *Commonwealth v. Caudill*, 540 S.W.3d 364, 367 (Ky. 2018). We review an allegation of error regarding the content of an instruction or its accuracy in stating the law *de novo. Id.* Here Beamon alleges the trial court erred in denying his request for an instruction on manslaughter in the first degree and we therefore review that decision for abuse of discretion.

A defendant has the right to have every issue of fact raised by the evidence and material to his defense submitted to the jury on proper instructions, including instructions as to lesser-included offenses. *Allen v. Commonwealth*, 338 S.W.3d 252, 255 (Ky. 2011). However, an instruction regarding a lesser-included offense is warranted if, and only if, under the evidence presented a reasonable juror could have reasonable doubt as to the defendant's guilt for the greater charge but find beyond a reasonable doubt that the defendant is guilty of the lesser charge. *Id.* In determining whether an instruction as to a lesser-included offense is warranted, the trial court must

5

consider the totality of the evidence presented at trial. *See Swan*, 384 S.W.3d at 99. On appeal, we consider whether a trial court erred in refusing a requested instruction on a lesser-included offense by construing the evidence in favor of the proponent of the instruction and asking "whether a reasonable juror could acquit of the greater charge but convict of the lesser." *Allen*, 338 S.W.3d at 255.

KRS[1] 505.020 provides that a lesser offense is included within a greater charged offense if the lesser offense "differs from the offense charged only in the respect that a lesser kind of culpability suffices to establish its commission."[2] KRS 505.020(2)(c). First-degree manslaughter requires a finding that the defendant caused the victim's death though he intended only to cause serious physical injury to her or a third person. KRS 507.030(1)(a). First-degree manslaughter is thus "generally thought of as a lesser included offense of intentional murder, an offense established by proof that the defendant caused a person's death intending to do so, inasmuch as the intent

---

[1] Kentucky Revised Statute

[2] KRS 505.020 also provides three other circumstances in which a lesser offense is included within a greater charged offense, namely when the lesser offense is 1) "established by proof of the same or less than all the facts required to establish the commission of the offense charged;" 2) "consists of an attempt to commit the offense charged or to commit an offense otherwise included therein;" or 3) "differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest suffices to establish its commission." KRS 505.020(2).

to injure may be deemed a lesser sort of culpability than the intent to kill."[3] *Allen*, 338 S.W.3d at 256.

Beamon argues a first-degree manslaughter instruction was warranted because some of the bullet holes were found on the lower part of the doors of Lazuri's car and the jury therefore could have found Beamon intentionally shot low with a goal of causing only fright or serious injury rather than death. A review of the totality of the evidence indicates there was no basis on which a reasonable juror could have reached such a conclusion. Perhaps most importantly, Pritchett testified that Beamon stated shortly before the shooting that he wanted to kill Goode, that Beamon adamantly rejected Pritchett's efforts to persuade him to consider a non-lethal alternative, and that Beamon was told Goode was in the car at the time of the shooting.[4] We are pointed to

---

[3] The trial court provided a murder instruction that set forth both intentional and wanton theories of murder. The verdict form did not differentiate between these two legal theories and thus the jury simply found Beamon guilty of murder without any indication as to whether the crime was intentional or wanton. The law is presently unsettled as to whether first-degree manslaughter is a lesser-included offense of wanton murder. *See Allen*, 338 S.W.3d at 257 (declining to "decide if and when first-degree manslaughter should be deemed a lesser included offense of wanton murder."). The parties have not briefed the issue and we therefore decline to resolve it here. However we will assume for purposes of Beamon's appeal that first-degree manslaughter was a lesser-included offense of his murder conviction regardless of whether the crime was intentional or wanton.

[4] Though Beamon's intended target may have been Goode rather than Lazuri, he nonetheless may be found guilty of murder because his intention to kill Goode (or wantonness) transfers to his killing of Lazuri:

> [U]nder . . . KRS 507.020(1)(a) . . ., the defendant is guilty of intentional murder if he intended to kill one person (V-1), but instead killed another (V-2). . . . Under KRS 501.060(3)(a), a defendant is guilty of wanton murder if, under circumstances manifesting extreme indifference to human life, he wantonly engages in conduct which creates a grave risk of death to one person (V-1) and thereby causes the death of another (V-2).

no evidence to contradict Beamon's own stated intention of causing death shortly before the shooting, such as evidence of Beamon expressing or manifesting any intention only to cause fright or injury.

In addition, though bullet holes were found low on the car doors, Beamon fired on the car multiple times. At least one shot was sufficiently high to pass through a window and the driver's seat headrest. Beamon also manufactured an alibi of being with a non-existent cousin at the time of the shooting. Taken together, the totality of the evidence, including Beamon's stated intent to kill Goode followed shortly by his firing of multiple shots, including at head-level, at a vehicle he believed to be occupied by Goode, simply could not support a reasonable conclusion that he merely intended only to cause fright or injury. He shot directly into a car occupied by four people. Thus, the evidence in this case precludes reasonable doubt that the shooter intended to kill, as opposed to merely injure. No reasonable juror could have entertained reasonable doubt under the evidence presented as to whether Beamon fired on the car with an intention to kill rather than merely injure. The trial court properly refused to instruct the jury as to manslaughter in the first degree. *See Caudill v. Commonwealth,* 120 S.W.3d 635, 668 (Ky. 2003) (affirming trial court refusal to give first-degree manslaughter instruction where the undisputed evidence showed defendant repeatedly struck victim in the

*Phillips v. Commonwealth,* 17 S.W.3d 870, 874 (Ky. 2000).

head with a hammer-like object and thus precluded "any reasonable doubt that whoever attacked [victim] intended to kill, as opposed to merely injure, her.").

Our conclusion here in no way lessens our continued recognition that "[e]ven when death is a natural and probable consequence of an act, there may exist circumstances which make it reasonable for the jury not to be convinced beyond a reasonable doubt that the defendant intended to cause death." *Smith v. Commonwealth*, 737 S.W.2d 683, 688 (Ky. 1987). Such circumstances exist where the evidence could lead a reasonable juror to conclude the defendant had some goal other than the death of the victim. *See Luttrell v. Commonwealth*, 554 S.W.2d 75, 78 (Ky. 1977) (holding trial court should have given lesser-included offense instruction where a reasonable juror could conclude arrestee shot police officer not to kill him but rather only to injure him and thereby effect an escape). A lesser-included offense instruction is also warranted where the evidence could support a reasonable conclusion that the defendant's mental state prevented the formation of an intent to kill. *Hudson v. Commonwealth*, 979 S.W.2d 106, 110 (Ky. 1998) (holding that because defendant stated he "went crazy" before strangling victim, a reasonable juror could conclude he merely engaged in wanton rather than intentional conduct). Evidence that could support a reasonable finding the defendant was simply indifferent to life likewise warrants the giving of lesser-included offense instructions. *See Holland v. Commonwealth*, 466 S.W.3d 493, 499 (Ky. 2015) (finding reasonable juror could conclude victim was simply indifferent to the victim's life given the lack of testimony or direct evidence as to his intent). An

9

instruction as to a lesser-included degree of homicide is also warranted where the evidence is "purely circumstantial and does not conclusively establish [the defendant's] state of mind at the time he killed the victim." *Commonwealth v. Wolford*, 4 S.W.3d 534, 539 (Ky. 1999).

The facts here are readily distinguishable from such circumstances. Beamon points us to no evidence that could have led a reasonable juror to conclude he had an objective other than death, that he was simply indifferent to life, or that he lacked a mental ability to intend to kill at the time of the crime. There is also no evidence the crime might have been unintentional, as in the case of an accidental killing that occurs during a struggle over a weapon.

This case also does not involve competing evidence or an absence of proof as to Beamon's state of mind. The evidence was that Beamon stated his express and adamant intent to kill shortly before the shooting. The circumstances of the crime, namely the shooting of an occupied vehicle multiple times including at head-level, were consistent with such an intent. Thus, while some cases involving conduct likely to result in death nonetheless also involve circumstances warranting the giving of a lesser-included offense instruction, this is not such a case. Quite simply, no reasonable juror could have entertained reasonable doubt that Beamon intended to kill rather than cause fright or injury. The trial court therefore did not err in refusing to provide an instruction on the lesser-included offense of manslaughter in the first degree. At a minimum, we discern no abuse of discretion in the trial court's instructions to the jury.

10

### III. The trial court properly denied Beamon's motions for directed verdict.

Beamon next argues the trial court erred in denying his motions for directed verdict.[5]  Beamon acknowledges this issue was at most "partially preserved" and therefore requests palpable error review pursuant to Kentucky Rule of Criminal Procedure ("RCr") 10.26.  We therefore review his allegations of error under that standard.

Under RCr 10.26, "[a] palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."  In determining whether an error is palpable, we consider

> "whether on the whole case there is a substantial possibility that the result would have been any different."  To be palpable, an error must be "easily perceptible, plain, obvious and readily noticeable."  A palpable error must be so grave that, if uncorrected, it would seriously affect the fairness of the proceedings.  "It should be so egregious that it jumps off the page . . . and cries out for relief."

*Davis v. Commonwealth*, 620 S.W.3d 16, 30 (Ky. 2021) (citations omitted).  Even where an error is palpable, relief is warranted only where it results in manifest injustice.  *Caudill*, 540 S.W.3d at 367.  An error results in manifest injustice if it "so seriously affected the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.'"  *Conrad*

---

[5] Beamon argues the trial court erred in denying his motions for directed verdict as to both the murder charge and the charge for assault in the first degree.  Because the two charges arise from the same shooting and because Beamon presents the same arguments as to both, we address them together.

*v. Commonwealth*, 534 S.W.3d 779, 783 (Ky. 2017) (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006)).

In considering a criminal defendant's motion for directed verdict, the trial court

> "must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth" and "assume that the evidence for the Commonwealth is true, but reserv[e] to the jury questions as to the credibility and weight to be given to such testimony." "If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given."

*Swan*, 384 S.W.3d at 102 (quoting *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

Beamon first contends the trial court erred in denying his motions for directed verdict because a number of witnesses were not credible. In considering a motion for directed verdict, a trial court generally may not disregard the testimony of a witness solely because the witness seems entirely lacking in credibility. *Ross v. Commonwealth*, 531 S.W.3d 471, 475 (Ky. 2017). The weight to be afforded to such testimony is best left to the jury "'since the triers of fact are particularly adept at judging credibility.'" *Id.* at 477 (quoting Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 3.00[2][b] at 239 (5th ed. 2013)). Thus, a trial court may disregard a witness's testimony only where "the substance of the testimony, *detached from the personal credibility of*

12

*the witness who bears it*, is so laden with doubt and implausibility that it cannot rationally be regarded as a fact capable of supporting a verdict." *Id.* at 475 (emphasis added). Examples satisfying this high bar are where the facts testified to are "'inherently impossible and absolutely at variance with well-established and universally recognized physical laws'" or the testimony is "so extraordinarily implausible or inherently impossible that it is manifestly without probative value or patently unworthy of belief." *Id.* at 476-77 (quoting *Louisville & N.R. Co. v. Chambers*, 165 Ky. 703, 178 S.W. 1041, 1043 (1915)).

Here, Beamon argues the trial court erred in not disregarding the testimony of a number of witnesses placing him near the scene of the crime. Beamon contends the witnesses' testimony was not credible because it was inconsistent with statements made to police or was motivated by lenient treatment or a desire for leniency in the witnesses' own cases. The jury could properly consider all those points in assessing the credibility and weight to be afforded to the testimony. However, Beamon points to no testimony that was so extraordinarily implausible or inherently impossible that the trial court was free to disregard it. As such, the trial court did not err in denying motions for directed verdict on grounds of the witnesses' lack of credibility, much less did it commit any error sufficient to warrant palpable error relief.

Beamon asserts the trial court also erred in denying his motions for directed verdict because the black hoodie containing his DNA and found near the murder weapon also contained the DNA of other persons and could have been left where it was found sometime before the shooting. In considering the

13

motion for directed verdict, the trial court was required to draw all fair and reasonable inferences from the evidence in the Commonwealth's favor. At least two witnesses testified they saw Beamon wearing a dark hoodie on the night of the shooting. The hoodie was found next to the murder weapon along the path Antoinette Malik described the shooter taking as he fled. Testing revealed both Beamon's DNA and gunpowder residue on the hoodie. One fair and reasonable inference from this evidence is that Beamon was wearing the hoodie at the time of the shooting and discarded it along with the murder weapon as he fled from the scene. The evidence at trial in any event also included other significant proof of Beamon's involvement in the shooting, including Beamon's own stated intention to kill Goode, Jones' testimony that he was 100% sure he saw Beamon shooting, and Beamon's invention of a false alibi and efforts to destroy cell phone evidence after the crime. As such, we find no error in the lack of a directed verdict in Beamon's favor.

### CONCLUSION

For the foregoing reasons, we affirm the judgment and sentence of the Kenton Circuit Court.

All sitting. Vanmeter, C.J.; Bisig, Conley, Keller, Lambert, and Nickell, JJ., concur. Thompson, J., concurs in result only.

14

COUNSEL FOR APPELLANT:

Julia Karol Pearson
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Matthew Robert Krygiel
Assistant Attorney General

15